IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| OSCAR POLK, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:18-cv-01214-STA-jay |
| ) | |
| MARTIN FRINK, ) | |
| ) | |
| Respondent. ) | |

**ORDER DIRECTING CLERK TO MODIFY DOCKET,
DENYING AMENDED § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Oscar Polk, Jr., has filed an amended *pro se* habeas corpus petition (the "Amended Petition") pursuant to 28 U.S.C. § 2254. (ECF No. 7.) For the following reasons, the Amended Petition is **DENIED**.

### BACKGROUND

In January 1998, a Hardeman County, Tennessee, grand jury charged Polk in a four-count indictment with the premeditated murders of Hester Harris and Ricco Lake and aggravated assault with a deadly weapon on Crystal Brown and Sheena Cashier. (ECF No. 18-1 at 5-7.)

At Polk's jury trial, Dr. Cynthia Gardner, a forensic pathologist, testified that she performed autopsies on the bodies of Harris and Lake. (ECF No. 18-3 at 15-34.) She found two bullets in each body and determined that the causes of death were multiple gunshot wounds. Tommy Heflin, a forensic scientist with the Tennessee Bureau of Investigation crime lab, testified

that bullets taken from the bodies of Harris and Lake were .22 caliber, and that one bullet from each body was fired from the same gun. (ECF No. 18-4 at 46-64.)

Darius Traylor testified that on the evening of July 26, 1997, he was at Luther Griggs's place, where he saw Polk, Harris, and Lake. Polk and Harris were arguing. The Defendant then threw a beer bottle on the road and said, "That's it" or "It's on." (ECF No. 18-3 at 63.) Willie Harris testified that he also was at Luther Griggs's that night. He heard the Defendant cursing and saying that one of the "boys" was going to die tonight. The witness also recalled that he later went to the DeJaVu club and heard six or seven gun shots from two different guns. (ECF No. 18-4 at 6-42.)

"Another trial witness, Tony Walker, testified that he was standing on the dance floor next to the defendant" at the DeJaVu club that night. *State v. Polk*, No. W1999-01935-CCA-R3-CD, 1999 WL 1532148, at *1 (Tenn. Crim. App. Dec. 20, 1999). He saw Cindy Nathan pass a gun to the Defendant. (ECF No. 18-5 at 20.) He recalled "the defendant shooting a gun and [saw] Mr. Harris and Mr. Lake fall to the ground." *Polk*, 1999 WL 1532148, at *1. He indicated that he thought that Polk's gun was a .22 caliber. (ECF No. 18-5 at 11.) Walker "further testified that the defendant had fired four shots in the direction of Mr. Harris and Mr. Lake and two shots in the direction of the disc jockey booth." *Polk*, 1999 WL 1532148, at *1. "Mr. Walker stated that at the time of the shooting he was also standing near [Kenneth Von] Bills, but he had not seen Mr. Bills with a gun." *Id.*

Dennis Tucker testified that he was at Luther Griggs's house on July 26, 1997. *Id.* He heard Polk say to Harris "Some of you boys going to die tonight." (ECF No. 18-3 at 71.) Tucker was also at the DeJaVu that evening and saw "both the defendant and Kenneth Bills with guns after the shooting." *Polk*, 1999 WL 1532148, at *1.

Roshanta Harris testified that she was at the DeJaVu club on the night in question. She recalled that "the defendant had a gun seconds before he started shooting." *Id.* She indicated "that she was approximately six or seven feet from the defendant when he began shooting." *Id.*

"Antrail Robertson and Michikia Beauregard were also present at the time of the shooting and both testified that they had seen the defendant firing a gun." *Id.* Beauregard recalled that Polk, Harris, and Lake were arguing, and she observed the Defendant getting a gun out of Cindy Nathan's purse. (ECF No. 18-6 at 27.) Both Roberston and Beauregard stated that they did not see "anyone else with a gun at that time." *Polk*, 1999 WL 1532148, at *1. "Dennis Tucker testified that he had seen both the defendant and Kenneth Bills with guns when they ran out of DeJaVu after the shooting." *Id.*

Sheena Cashier and Crystal Brown both testified that they were at the DeJaVu Club when the shooting occurred. Each woman was shot in the arm. (ECF No. 18-3 at 34-45; ECF No. 18-4 at 64-68.)

Polk and two women who were at the DeJaVu club that evening testified for the defense. *Polk*, 1999 WL 1532148, at *1. Rhonda Cross testified that she did not see the Defendant with a weapon and that she observed Bills shooting from the dance floor. (ECF No. 18-6 at 47-67.) Stephanie Turner recalled that she saw Bills outside the club after the shooting and that he had a gun in his hand. (*Id.* at 71.) Polk testified that he was dancing at the DeJaVu when the shooting started. He denied shooting anyone. He also recalled seeing Bills with a pistol. (ECF No. 18-7 at 9-41.)

The jury returned guilty verdicts on all counts. *Polk*, 1999 WL 1532148, at *1. The Defendant was "sentenced to a term of life imprisonment for each first-degree murder conviction

3

and a term of four years for each aggravated assault conviction." *Id.* Polk took an unsuccessful direct appeal. *Id.* at *1-2.

In December 2000, Petitioner filed, through counsel, a petition in state court seeking post-conviction relief. (ECF No. 18-11 at 113-15.) The State did not file a response until November 2017. (*Id.* at 141-42.) The trial court conducted an evidentiary hearing at which Petitioner and trial counsel testified. (ECF No. 18-12.) The post-conviction trial court denied relief in a written order on May 16, 2018. (ECF No. 18-11 at 147-50.) Petitioner appealed. *Polk v. State*, No. W-2018-01072-CCA-R3-PC, 2019 WL 911156, at *1 (Tenn. Crim. App. Feb. 15, 2019).

## DISCUSSION

On October 26, 2018, during the pendency of his state post-conviction appeal, Polk filed a *pro se* § 2254 petition, to which he appended a sworn declaration by an individual named Sandy Polk. (ECF No. 1 & 1-1.) He subsequently submitted the Amended Petition in compliance with the Court's order to refile his claims on this district's official § 2254 form.[1] In Claim 1, Polk challenges the TCCA's ruling that the evidence was sufficient to convict him of two counts of first degree murder. In Claim 2, he posits that counsel rendered ineffective assistance.

Petitioner subsequently filed a motion to hold the proceedings in abeyance pending the conclusion of his state post-conviction appeal. (ECF No. 8.) By order dated January 2, 2019, the Court granted the motion, stayed the proceedings, and administratively closed this case. (ECF No. 9.) Polk was directed to notify the Court of the resolution of the state court case within thirty days of that event.

---

[1] Petitioner did not attach Sandy Polk's declaration to the Amended Petition. Nevertheless, given Petitioner's *pro se* status, the Court considers the declaration to be part of the Amended Petition.

4

On February 15, 2019, the Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief. *Polk*, 2019 WL 911156, at *1. Polk then filed a motion to reopen the instant matter and lift the stay. (ECF No. 10.) The Court granted the motion, ordered Respondent Martin Frink[2] to respond to the Amended Petition, and informed Petitioner that he could, if he wished, submit a reply within twenty-eight days of service of the Response.

Respondent submitted his Response on July 9, 2019. (ECF No. 21.) He argues that Claim 1 is without merit and that Claim 2 is not well-pleaded. In the alternative, he posits that Claim 2 is procedurally defaulted and without merit. Petitioner did not file a reply.

## I. Legal Standards

### A. Federal Habeas Review

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted when the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light

---

[2] The Clerk is **DIRECTED** to modify the docket to reflect Martin Frink as Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); Fed. R. Civ. P. 25(d).

of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs when the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted is he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Id.* at 750. The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).

A petitioner may also overcome his procedural defaults by establishing a "gateway" claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). To open the gateway, a prisoner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—

7

that was not presented at trial." *Id.* at 324. He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 327.

### B. Sufficiency of the Evidence

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (holding *Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 319. *See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (holding that, under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). *Jackson*'s evidence-sufficiency standard may be met with circumstantial evidence. *See Desert Palace, Inc., v. Costa*, 539 U.S. 9, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *see also United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.").

The AEDPA adds a layer of deference to *Jackson's* already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or "based on an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254(d)(1)-(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 566 U.S. at 656.

### C.  Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Pollini v. Robey*, 981 F.3d 486, 493 (6th Cir. 2020), *cert. denied*, No. 20-7918, 2021 WL 2519379 (U.S. June 21, 2021). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

9

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Id.* at 690-91. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

## II.   Claim 1

Petitioner asserts that the determination by the Tennessee Court of Criminal Appeals that the evidence was sufficient to sustain the murder convictions was contrary to or involved an unreasonable application of clearly established federal law or was predicated on an unreasonable determination of the facts. (ECF No. 7 at 14.) He posits, specifically, "that the only proof tending to connect him to these crimes is the testimony of several witnesses." (*Id.* at 16.) He points out

10

that the defense witnesses "contradict[ed]" several other witnesses who said he was the shooter.[3] (*Id.* at 21.) Petitioner unsuccessfully advanced these arguments in his direct appeal brief. (ECF No. 18-8 at 16-17 ("The only proof tending to connect the defendant to the act of shooting is the testimony of three witnesses who said they saw the defendant either possessing a gun, or shooting toward the two deceased men. . . . On the other hand, there were other witnesses who put another to be the shooter. . . There is proof of multiple guns on the premises that night, . . . but only one witness connecting the defendant to possession of a .22 caliber handgun.")

Respondent maintains that the TCCA's decision holding that the evidence was sufficient to convict Polk of first degree murder survives review under AEDPA's deferential standards. More specifically, he contends that Claim 1 is without merit because Petitioner's challenge to the state court's decision is nothing more than a complaint about the court's decision to defer to the jury's credibility determinations.

In Tennessee, first degree murder is the "premeditated and intentional killing of another." Tenn. Code Ann. § 39–13–202(a)(1). A person "acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39–11–302(a). Premeditation requires "an act done after the exercise of reflection and judgment" and "means that the intent to kill must have been formed prior to the act itself." Tenn. Code Ann. § 39–13–202(d).

---

[3] In support of his argument, Petitioner relies in part on the declaration of Sandy Polk. The declarant swears that she was standing next to Petitioner on the dance floor during the shooting and that she did not see Walker there. (ECF No. 1-1.) The Court cannot consider the newly-produced declaration in determining whether Claim 1 has merit. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (a federal habeas court's review of a claim "under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

In assessing the sufficiency of the evidence to support Polk's murder convictions, the appellate court, citing to *Jackson*, identified the relevant question as whether, after considering "the evidence in the light most favorable to the prosecution[,] . . . 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Polk*, 1999 WL 1532148, at *2 (quoting *Jackson*, 443 U.S. at 319). The court noted that at the criminal trial "the State's witnesses identif[ied] the defendant as the gunman," and that the jury implicitly found their testimonies to be credible. *Id.* The TCCA stressed that it was the province of the jury to make those credibility determinations. *Id.* In light of the accredited testimonies, the court found that the evidence was sufficient "for the jury to find the defendant guilty beyond a reasonable doubt." *Id.*

Because the TCCA identified *Jackson*'s evidence sufficiency standards and applied them to the facts of Petitioner's case, its determination that the evidence was sufficient to support the convictions is not "contrary to" controlling Supreme Court. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The state appellate court's decision is also not based on unreasonable factual determinations. Credibility determinations are findings of fact. *See McMullan v. Booker*, 761 F.3d 662, 671 (6th Cir. 2014) ("fact-based determination[s] subject to scrutiny under § 2254(d)(2)" include "facts in the sense of a recital of external events and the credibility of their narrators") (quoting *Thompson v. Keohane,* 516 U.S. 99, 110 (1995)). The jury in Polk's trial was tasked with resolving any conflicts between witness testimonies and making credibility determinations. Consistent with *Jackson's* commands, the TCCA refused to disturb the jury's implicit findings that the State's witnesses identifying Polk as the shooter were credible. This Court, sitting in federal

habeas, will not disturb the TCCA's own refusal to disrupt the jury's credibility determinations. *See Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about [a witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

Based on the accredited testimonies of the State's witnesses, a reasonable juror could conclude that Petitioner fired the shots that killed the victims. The record therefore supports the TCCA's conclusion that the evidence was sufficient to convict Polk of two counts of first-degree premeditated murder. The appellate court's decision was thus not based on an unreasonable application of *Jackson*'s standards. Claim 1 is **DENIED**.

### III. Claim 2

The Amended Petition alleges in Claim 2 that counsel rendered "ineffective assistance." (ECF No. 7 at 6.) In lieu of providing supporting facts for Claim 2, the pleading states as follows: "Petitioner's ineffective assistance of counsel claims [are] still before the TCCA, and request to amend later." (ECF No. 7 at 6.) Polk did not seek to amend the Amended Petition upon completion of his state court proceedings.

Respondent argues that the claim is inadequately pleaded because it is unaccompanied by supporting facts. He also maintains that, if Petitioner means to raise in this federal habeas case the single claim he raised on post-conviction appeal, that claim is procedurally defaulted. Respondent additionally argues that the TCCA's alternative merits ruling on that single claim passes muster under the AEDPA's deferential standards.[4]

---

[4] Respondent also suggests that Petitioner might have intended to assert all of the ineffective assistance claims he raised in the post-conviction trial court but not on appeal. Even if liberally construed, the Amended Petition does not present those unexhausted claims. Instead, the pleading's reference to "the ineffective assistance of counsel claims still before the TCCA" could only be liberally construed, if at all, to present the single issue raised in the post-conviction appeal.

13

Petitioner did not file a reply. There is therefore no clarification from him regarding the scope of the claim.

### A. Pleading Deficiency

Rule 2(c) of the *Rules Governing Section 2254 Cases in the United States District Courts* provides that a petitioner must state the nature of his claims and present supporting facts. "Dismissal under Habeas Rule 2(c) is appropriate in cases where it is impossible to determine from the petitioner's pleadings the exact errors of fact or law raised for adjudication." *Malone v. Lee*, No. 2:17-cv-02913-MSN-tmp, ECF No. 31 at 27 n.7 (W.D. Tenn. May 4, 2020) (citing *Rice v. Warden*, No. 1: 14-cv-732, 2015 WL 5299421, at *4 (S.D. Ohio Sept. 9, 2015) (dismissal under Rule 2(c) appropriate where pleadings contain unintelligible and conclusory allegations and statements) (citations omitted)); *Acord v. Warden, Lebanon Corr. Inst.*, No. 2:12-CV-355, 2013 WL 228027, at *1 (S.D. Ohio Jan. 22, 2013), *report and recommendation adopted sub nom. Acord v. Warden, Ross Corr. Inst.*, No. 2:12-CV-355, 2013 WL 1324323 (S.D. Ohio Mar. 28, 2013) (a habeas court is not required to "conjure allegations" on petitioner's behalf).

Claim 2 fails to meet the minimum pleading standards of Rule 2(c). The assertion of "ineffective assistance" is not accompanied by supporting facts and is thus conclusory. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012). ("Merely conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim."). Accordingly, the claim is subject to dismissal as being inadequately pled.

### B. Procedural Default

As Respondent suggests, Petitioner may mean to assert in Claim 2 that counsel rendered ineffective assistance by failing to point out to the jury that the State had not produced evidence of gunshot residue on his body or his clothes. Petitioner presented the claim on appeal from the

denial of post-conviction relief. *Polk*, 2019 WL 911156, at *1. Although he had raised the issue at the post-conviction hearing, the TCCA held that he nevertheless waived it by failing to present it in his post-conviction petition. *Id.* at *3. Respondent argues that the court applied an independent and adequate state procedural rule that bars the claim from federal habeas review.

The Court declines Respondent's invitation to address whether the TCCA applied an independent and adequate state procedural rule. For one thing, Respondent did not present an elaborated argument on this point in his Response. Additionally, in its brief before the TCCA in the post-conviction appeal, the State acknowledged that application of the waiver rule against a petitioner who litigated the issue during the post-conviction hearing was arguably improper under a "line of unpublished authority" and "a third line of cases." (ECF No. 18-15 at 13-14.) The procedural-default issue is therefore somewhat "nettlesome." *Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011) (quoting *Benton v. Booker,* 403 F. App'x. 984, 985 (6th Cir. 2010)). Under this circumstance, the Court finds that the more straightforward path is to address the merits of the claim. *See id.* (a court may "cut to the merits" of a claim where the procedural-default question is complex).

### C. Merits

In the post-conviction appeal, the TCCA concluded that, "[w]aiver notwithstanding, the Petitioner failed to establish deficient performance or prejudice to his case as a result of trial counsel's failure to argue the lack of gunshot residue testing at trial." *Polk*, 2019 WL 911156, at *4. The court found that "Petitioner failed to produce any gunshot residue testing at the hearing to confirm his conclusory testimony." *Id.* The court also found that "at least six people testified at trial that the Petitioner had a gun when the shooting occurred. Two eyewitnesses observed the Petitioner shoot in the direction of the victims, and two other eyewitnesses observed him with a

15

gun and did not observe anyone else with a gun." *Id.* In light of this "overwhelming proof at trial," the TCCA found that Petitioner "failed to establish how trial counsel's failure to argue the lack of gunshot residue testing would have changed the outcome of his trial." *Id.*

Although the TCCA did not cite to *Strickland*, it identified that decision's two-part test as governing its analysis. The court's alternative merits ruling is therefore not contrary to clearly established Supreme Court law. *See Williams*, 529 U.S. at 406.

Nor is the decision based on unreasonable factual determinations or the result of an unreasonable application of *Strickland*'s standards to the facts. Petitioner does not identify any clear and convincing evidence to undermine the TCCA's finding that he failed to produce gunshot residue testing to support his claim or its finding that the record in the criminal trial contained significant evidence of his guilt. Given those facts, the appellate court did not unreasonably conclude that Petitioner failed to establish any deficiency in counsel's performance or that counsel's conduct prejudiced him. Claim 2 is therefore **DISMISSED** as inadequately pled and without merit.

For all of these reasons, the Amended Petition is **DENIED**. Judgment shall be entered for Respondent.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve

encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Amended Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[5]

    **IT IS SO ORDERED**.

                                                        s/ S. Thomas Anderson
                                                        S. THOMAS ANDERSON
                                                        CHIEF UNITED STATES DISTRICT JUDGE

                                                        Date: August 15, 2022

---

[5] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.